UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
                                     :   Lead Case No. 10-cv-08323

IN RE ITT EDUCATIONAL SERVICES, INC. :
SECURITIES AND SHAREHOLDER        :   MEMORANDUM OF LAW IN SUPPORT
DERIVATIVE LITIGATION                   :   OF THE MOTION OF WYOMING
                                       :   RETIREMENT SYSTEM'S APPOINTMENT
————————————————————   :   AS LEAD PLAINTIFF AND APPROVAL
                                       :   OF SELECTION OF LEAD COUNSEL
This Document Relates To:            :
                                       :
           Securities Actions           :
———————————————————— x

## I.      PRELIMINARY STATEMENT

Presently pending before this Court is a securities class action lawsuit (the "Action"), brought on behalf of all purchasers of the securities of ITT Educational Services, Inc. ("ITT" or the "Company") between October 23, 2008 and August 13, 2010, inclusive (the "Class Period").  The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78u-4 et seq.) and the Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Wyoming Retirement System ("WRS") hereby moves this Court for an Order to: (i) appoint WRS as Lead Plaintiff in the Action under Section 21D(a)(3)(B) of the Exchange Act; and (ii) approve WRS's selection of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as Lead Counsel.

This motion is made on the grounds that WRS is the most adequate plaintiff, as defined by the PSLRA.  WRS is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA.  *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs).  Moreover, as an institutional investor, WRS is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the class.

During the Class Period, WRS incurred a substantial $2,234,074.32 loss on its transactions in ITT securities.  *See* Alba Decl., Ex. B.[1]  To the best of its knowledge, this is the greatest loss

---

[1]      References to the "Alba Decl., Ex. __" are to the exhibits attached to the accompanying Declaration of Mario Alba Jr., dated January 3, 2011, and submitted herewith.

sustained by any moving class member or class member group who has brought suit or filed an application to serve as Lead Plaintiff in this Action.  In addition, WRS, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

## II.   FACTUAL BACKGROUND[2]

ITT is a leading private college system focused on technology-oriented programs of study. The Company operates over 105 ITT Technical Institutes in 37 states which predominantly provide career-focused, degree programs to approximately 70,000 students.

The complaint alleges that, throughout the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results.  Specifically, defendants failed to disclose that: (i) the Company had engaged in improper and deceptive recruiting and financial aid lending practices and, due to the government's scrutiny into the for-profit education sector, the Company would be unable to continue these practices in the future; (ii) the Company failed to maintain proper internal controls; (iii) many of the Company's programs were in jeopardy of losing their eligibility for federal financial aid; and (iv) as a result of the foregoing, defendants' statements regarding the Company's financial performance and expected earnings were false and misleading and lacked a reasonable basis when made.

On August 13, 2010, after the market closed, the U.S. Department of Education released data on federal student-loan repayment rates at the nation's colleges and universities.  The data showed that repayment rates were 54% at public colleges and 56% at private non-profit institutions,

---

[2]      These facts are drawn from the allegations in the complaint.

compared to just 36% at for-profit colleges.  Specifically, the data showed that the repayment rate at ITT was just 31%.  On this news, the price of ITT stock dropped 14.61%, or $9.40 per share, from a closing price of $64.33 per share on August 13, 2010 to a closing price of $54.93 per share on August 16, 2010, the following trading day.

## III.    ARGUMENT

### A.    WRS Should Be Appointed Lead Plaintiff

#### 1.    The Procedure Required By the PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i).  Plaintiff here caused the first notice regarding the pendency of the Action to be published on *Business Wire*, a national, business oriented newswire service, on November 3, 2010.  *See* Alba Decl., Ex. A.  Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  15 U.S.C. §§78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class who the Court determines to be most capable of adequately representing the interests of class members.  *See* 15 U.S.C. §78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that

(aa) has either filed the complaint or made a motion in response to a notice. . .

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2.   WRS Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### a.   WRS Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on January 3, 2011.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice on November 3, 2010, WRS timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

WRS has duly signed and filed a certification stating that it is willing to serve as a representative party on behalf of the class.  *See* Alba Decl., Ex. C.  In addition, WRS has selected and retained competent counsel to represent itself and the class.  *See* Alba Decl., Ex. D. Accordingly, WRS has satisfied the individual requirements of 15 U.S.C. §78u4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and approval of selection of Lead Counsel as set forth herein, considered and approved by the Court.

- 4 -

### b.   WRS Is Precisely the Type of Lead Plaintiff Congress Envisioned When it Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation.  WRS, as an institutional investor, is precisely the type of Lead Plaintiff Congress envisioned when it passed the PSLRA.  *See id.*

### c.   WRS Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certification, *see* Alba Decl., Ex. C, WRS incurred a substantial  $2,234,074.32  loss on its transactions in ITT securities.  *See* Alba Decl., Ex. B.  WRS thus has a significant financial interest in this case.  Therefore, WRS satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this Action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### d.   WRS Otherwise Satisfies Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party

may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.  *See Lax v. First Merchs. Acceptance Corp*., No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *20, (N.D. Ill. Aug. 11, 1997).  WRS satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members.  *See Rossini v. Ogilvy & Mather, Inc*., 798 F.2d 590, 598 (2d Cir. 1986).  Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Sofran v. LaBranche & Co*., 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact").  The requirement that the proposed class representatives' claims be typical of the claims of

the class does not mean, however, that the claims must be identical.  *See Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *18.

WRS satisfies this requirement because, just like all other class members, it: (1) purchased ITT securities during the Class Period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages as a result thereof.  Thus, WRS's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class."  The PSLRA directs this Court to limit its inquiry regarding the adequacy of WRS to represent the class to the existence of any conflicts between the interest of WRS and the members of the class.  The Court must evaluate adequacy of representation by considering: (i) whether the class representatives' claims conflict with those of the class; and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004).

Here, WRS is an adequate representative of the class.  As evidenced by the injuries suffered by WRS and the class, the interests of WRS are clearly aligned with the members of the class, and there is no evidence of any antagonism between WRS' interests and those of the other members of the class.  Further, WRS has taken significant steps that demonstrate it will protect the interests of the class: it has retained competent and experienced counsel to prosecute these claims.  In addition, as shown below, WRS' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner.  Thus, WRS *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

B.    **The Court Should Approve WRS' Choice of Counsel**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent.  In that regard, WRS has selected the law firm of Robbins Geller as Lead Counsel.  Robbins Geller has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Securities Litigation*, No. H-01-3624 (S.D. Tex.), in which Robbins Geller has obtained recoveries to date which represent the largest recovery ever obtained in a shareholder class action.  *See* Alba Decl., Ex. D.  Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country.  It is not surprising that Defendants have not argued that counsel is not adequate.  Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

Accordingly, the Court should approve WRS's selection of Lead Counsel.

IV.    **CONCLUSION**

For all the foregoing reasons, WRS respectfully requests that the Court: (i) appoint WRS as Lead Plaintiff in the Action; (ii) approve its selection of Lead Counsel as set forth herein; and (iii) grant such other relief as the Court may deem just and proper.

DATED:  January 3, 2011                    ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                           SAMUEL H. RUDMAN
                                           DAVID A. ROSENFELD
                                           MARIO ALBA JR.


                                    _____
                                           /s/ *MARIO ALBA JR.*
                                           MARIO ALBA JR.

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID J. GEORGE
ROBERT J. ROBBINS
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN K. GRANT
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID W. HALL
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiff