UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

OPERATING ENGINEERS CONSTRUCTION INDUSTRY AND MISCELLANEOUS PENSION FUND, Individually and on Behalf of All Others Similarly Situated,

                Plaintiff,

  - against-

ITT EDUCATIONAL SERVICES, INC., KEVIN M. MODANY, and DANIEL M. FITZPATRICK,

                Defendants.

------------------------------------------------------------

No. 10 Civ. 8323 (VM)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF PLYMOUTH COUNTY CONTRIBUTORY RETIREMENT SYSTEM TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

Institutional investor class member and lead plaintiff movant Plymouth County Contributory Retirement System ("Plymouth County" or "Movant"), respectfully submits this memorandum of law in support of its motion for: (i) appointment of Plymouth County as lead plaintiff in this action pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4; (ii) approval of Plymouth County's selection of the law firm of Scott+Scott LLP to serve as lead counsel for the putative class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v); and (iii) granting such other and additional relief as the Court may deem just and proper.[1]

## I.   INTRODUCTION

Presently pending before this Court is the above-captioned securities class action lawsuit (the "Action") brought on behalf of all persons who purchased or otherwise acquired ITT Educational Services, Inc. ("ESI" or the "Company") common stock during the Class Period (the "Class").[2]  The relevant "Class Period" is defined as commencing October 23, 2008 and culminating on August 13, 2010, inclusive.[3]  The Action is brought pursuant to §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). "Defendants" include ESI and certain key executives.[4]

---

[1]  As of the date this motion is being filed, **one securities fraud class action** requiring appointment of lead plaintiff is pending in this Court against defendant ESI – *Operating Engineers Construction Industry and Miscellaneous Pension Fund v. ITT Educational Services, Inc.*, No. 1:10-cv-08323-VM, filed on November 3, 2010.  This motion does not seek consolidation of other related actions.  However, the [Proposed] Order Appointing Plymouth County Contributory Retirement System as Lead Plaintiff and Approving Its Selection of Scott+Scott LLP as Lead Counsel, if granted, would apply to all securities fraud class actions subsequently consolidated with this present Action.

[2]  As defined at ¶5 of the Class Action Complaint for Violations of the Securities Laws filed herein on November 3, 2010 (the "Complaint").

[3]  *Id*.

[4]  *Id*.

Pursuant to §21D(a)(B)(iii) of the Exchange Act, the Court is to appoint the movant with the largest financial interest in the litigation that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Pursuant to §21D(a)(3)(B)(v), the Court is also to approve the lead plaintiff's selection of lead counsel.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

Here, Plymouth County should be appointed as lead plaintiff because: (1) this motion is timely filed; (2) to the best of its knowledge, Plymouth County possesses the largest financial interest in the litigation; and (3) Plymouth County will adequately represent the interests of the entire putative class.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  Moreover, Plymouth County's selection of the law firm of Scott+Scott LLP ("Scott+Scott") to serve as lead counsel for the Class should be approved.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.     FACTUAL BACKGROUND

This is a securities class action brought on behalf of all persons or entities, except for defendants, who purchased or otherwise acquired the publicly traded securities of ESI during the Class Period against ESI and certain of its officers and/or directors for violations of the Exchange Act. ¶18.[5]

ESI is a for-profit provider of post-secondary degree programs.  ¶24. The Company offers associate's, bachelor's, and master's degrees in various fields. *Id.*  As of December 31, 2009, ESI offered degree programs to approximately 80,000 students, and had 121 campuses located in 38 states. *Id.*  For-profit colleges, such as those operated by ESI, enroll less than 10% of the nation's students, but get almost a quarter of the $24 billion the U.S. government provides in student financial aid programs under Title IV of the Higher Education Act of 1965, which include Pell Grants and Stafford Loans. In 2009, approximately 70% of ESI's revenue came from such programs.

---

[5]   All ¶ and ¶¶ references are to the Complaint.

On August 4, 2010, the U.S. Government Accountability Office ("GAO") issued a report finding that the recruitment practices of certain for-profit colleges, including ESI's, encouraged applicants to falsify information on federal financial aid application forms so the schools could improperly obtain federal aid dollars. *See* ¶46. Then, on August 6, 2010, ESI announced that the Company had received a request from the U.S. Senate Committee on Health, Education, Labor and Pensions relating to for-profit colleges and financial aid. ¶47. In response, ESI share prices fell $4.48 per share to close at $70.92 on August 6, 2010. ¶48.

On August 13, 2010, after the market closed, the U.S. Department of Education released data on federal student-loan repayment rates at U.S. colleges and universities. ¶50. Notably, the Department of Education data showed that repayment rates averaged just 36% at for-profit colleges – compared to 54% at public colleges and 56% at private non-profit institutions. *Id.* However, the study found that the repayment rate at ESI's schools was just 31%. *Id.* Under concurrently proposed Department of Education "gainful employment" guidelines, this rate of repayment would jeopardize ESI's ability to obtain future Title IV funding. ¶51. On this news, the price of ESI stock plummeted 14.61%, or $9.40 per share, from a closing price of $64.33 per share on August 13, 2010 to a closing price of $54.93 per share on August 16, 2010, the following trading day. ¶52.

The Complaint charges that, during the Class Period, defendants, including certain of ESI's officers and directors, violated federal securities laws by making a series of false and misleading statements to investors, concealing material facts about enrollment and loan repayment rates in the Company's degree programs. ¶54. Specifically, the Complaint alleges that ESI failed to disclose that: (i) the Company had engaged in improper and deceptive recruiting and financial aid lending practices and, due to the government's scrutiny into the for-profit education sector, the Company would be unable to continue these practices in the future; (ii) the Company failed to maintain proper internal controls; (iii) many of the Company's programs were in jeopardy of losing their eligibility for federal financial aid; and (iv) as a result

of the foregoing, ESI's statements regarding the Company's financial performance and expected earnings were false and misleading and lacked a reasonable basis when made. *Id*.

## III. ARGUMENT

### A. Plymouth County Satisfies the Exchange Act's Lead Plaintiff Requirements and Should Be Appointed Lead Plaintiff

The Exchange Act establishes the procedure governing the appointment of a lead plaintiff in private actions brought as class actions pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(1)-(3)(B)(ii). First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice"). 15 U.S.C. §78u-4(a)(3)(A)(i). Here, the relevant Early Notice was published in *Business Wire* on November 3, 2010. *See* Declaration of David R. Scott concurrently filed herewith ("Scott Decl."), Ex. A. Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B); *see also Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05 Civ. 04617, 2006 WL 197036, at *2 (S.D.N.Y. Jan. 25, 2006).

Second, the Exchange Act provides that within 90 days after publication of the Early Notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). Under this Exchange Act provision, "the 'most adequate plaintiff' [is] determined by a two-step competitive process" and appointed to serve as lead plaintiff. *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (J. Scheindlin). The Exchange Act provides that the Court is to presume the "most adequate plaintiff" to be the class member plaintiff who: (1) has either filed a complaint or moved for lead plaintiff in response to a notice; and (2) "has the largest

financial interest in the relief sought" that otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I) and *id.*

### 1.     Plymouth County Has Timely Moved for Appointment as Lead Plaintiff

All putative class members who seek appointment as lead plaintiff in this matter are required to move for appointment within 60 days of the initial publication of the Early Notice on November 3, 2010.  15 U.S.C. §78u-4(a)(3)(A)-(B).  Pursuant to the lead plaintiff provisions of the Exchange Act and within the requisite timeframe after publication of the required Early Notice, Plymouth County hereby timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.  Plymouth County also has duly signed and filed a Certification stating its willingness to serve as a representative party on behalf of the Class.  *See* Scott Decl., Ex. B.

### 2.     Plymouth County Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, Plymouth County purchased the common stock of ESI and suffered an estimated loss of over $413,121 as a result thereof.[6]  *See* Scott Decl., Ex. C.  Movant is not aware of any other lead plaintiff applicant with a larger financial interest in the litigation.  Because Plymouth County has the requisite financial interest and, as discussed below, otherwise satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, it should be appointed lead plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

---

[6]  The total potential recoverable losses suffered by lead plaintiff movants are not the same as their legally compensable damages, measurement of which is often a complex legal question that cannot be determined at this stage of the litigation.  The approximate losses, however, can be determined from the certification requirement under Section 21D of the Exchange Act, 15 U.S.C. §78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's shares.

5

### 3. Congress Expressly Envisioned that Institutional Investors Like Plymouth County Would Be Appointed as Lead Plaintiffs in Securities Fraud Actions as Here

Congress reasoned that increasing the role of larger investors, like Plymouth County, which typically have a larger financial stake in the outcome of the litigation, would be beneficial because investors with a large financial stake are more apt to effectively manage complex securities litigation. *See* Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 697, 733.  ("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."). Indeed, courts have found that the appointment of institutional investors is consistent with the legislative intent of the PSLRA. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99-100 & n.23 (S.D.N.Y. 2005); *see also In re UBS Auction Rate Sec. Litig.,* No. 08 Civ. 2967, 2008 WL 2796592, at *4 (S.D.N.Y. July 16, 2008) ("the PSLRA reflects a preference on the part of the Congress that passed it that institutional investors are the most desirable lead plaintiffs"); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001) (as an institutional investor, the proposed lead plaintiff "closely fits the profile of the kind of lead plaintiff Congress had in mind when it enacted the Reform Act").

Here, Plymouth County, a sophisticated public pension fund investor with a significant financial stake in this litigation, is precisely the type of lead plaintiff envisioned by Congress and, therefore, should be appointed as such.

### 4. Plymouth County Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

According to 15 U.S.C. §78u-4(a)(3)(B), the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Of the four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the court need only make finding as to the typicality and adequacy of the proposed lead plaintiff, and that finding need only be "preliminary" at this stage. *See Tronox*, 262 F.R.D. at 343. "'Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"[7] *Id.* "'The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class.'" *Id.*

Plymouth County satisfies the typicality requirement because, like all other class members, it purchased ESI securities at prices artificially inflated by the allegedly materially false and misleading statements issued by defendants and suffered damages thereby. Thus, Plymouth County's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same conduct and course of events.

Plymouth County is also "adequate" because its interests are aligned with the interests of the Class and because both suffered from the same artificial inflation of the price of ESI securities and would benefit from the same relief. Moreover, there is no evidence of antagonism between Plymouth County and the putative class. Finally, as shown below, Plymouth County's proposed lead counsel for the class, Scott+Scott, is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Therefore, Plymouth County *prima facie* satisfies all of the requirements of Rule 23 for the purposes of this Motion.

---

[7] Unless otherwise noted, all emphasis is added and citations are omitted.

B.   **The Court Should Approve Plymouth County's Selection of Counsel**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. In that regard, Plymouth County has selected Scott+Scott to serve as lead counsel. Scott+Scott is a firm with substantial experience in the prosecution of shareholder and securities class actions and possesses the resources necessary to efficiently conduct this litigation. *See* Scott Decl., Ex. D. Specifically, Scott+Scott has served as lead or co-lead counsel in many high profile class actions, recovering hundreds millions of dollars for investors and others harmed by corporate fraud and mismanagement.[8] For instance, commenting on the speed, legal acumen and tenacity Scott+Scott partners employed in obtaining a temporary restraining order enjoining the "off shore transfer of…approximate[ly] $1 billion in assets" held by Madoff "feeder funds," one court recently held that:

> It is this Court's position that Scott+Scott did a superlative job in its representation . . . . For the record, it should be noted that Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case. The extremely professional and thorough means by which [Scott+Scott] has litigated this matter has not been overlooked by this Court. They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors.

---

[8]   Some other recoveries of note for Scott+Scott include: settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01844 (D. Conn.), a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.). Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone* Systems*, Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices).

*New York University v. Ariel Fund Limited*, No. 603803/08, Opinion at 9-10 (New York State Supreme Court, New York County, Feb. 22, 2010); Scott Decl., Ex. E.

Accordingly, the Court should approve Movant's selection of counsel.

### IV. CONCLUSION

For all the foregoing reasons, Plymouth County respectfully requests that the Court: (1) appoint Plymouth County as lead plaintiff in the Action; (2) approve Plymouth County's selection of Scott+Scott to serve as lead counsel for the Class, and (3) order such other relief as the Court may deem just and proper.

DATED: January 3, 2011

SCOTT+SCOTT LLP

/s/David R. Scott
DAVID R. SCOTT (DS-8053)
DONALD BROGGI
JOSEPH P. GUGLIELMO (JG-2447)
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: drscott@scott-scott.com
       dbroggi@scott-scott.com
       jguglielmo@scott-scott.com

SCOTT+SCOTT LLP
MARY K. BLASY
707 Broadway, 10th Floor
San Diego, CA 92101
Tel.: (619) 233-4565
Fax (619) 233-0508
Email: mblasy@scott-scott.com

*Counsel For Proposed Lead Plaintiff Plymouth County Contributory Retirement System*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 3, 2011.

/s/David R. Scott
DAVID R. SCOTT (DS-8053)
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY  10110
Telephone: (212) 223-6444
Fax: (212) 223-6334
Email: drscott@scott-scott.com