UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------X
                              :
In Re ITT EDUCATIONAL         :
SERVICES, INC.                :
SECURITIES AND SHAREHOLDER    :      10 Civ. 8323 (VM)
DERIVATIVES LITIGATION        :
                              :      **DECISION AND ORDER**
                              :
---------------------------- X

**VICTOR MARRERO, United States District Judge.**

This matter is before the Court on the Motion to

Dismiss (the "Motion") (Docket No. 43) Plaintiff's

Corrected Consolidated Class Action Complaint (the

"Complaint" or "Compl.") (Docket No. 36) filed by

defendants Kevin M. Modany ("Modany"), Daniel M.

Fitzpatrick ("Fitzpatrick," with Modany, the "Individual

Defendants"), and ITT Educational Services, Inc. ("ESI",

collectively, the "Defendants").[1]

Wyoming Retirement System ("Plaintiff") is the lead

plaintiff in a putative federal securities class action

suit brought pursuit to §§ 10(b) and 20(a) of the

Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) &

78t(a), and Securities Exchange Commission ("SEC") Rule

10b-5 ("Rule 10b-5") promulgated thereunder, 17 C.F.R. §

240.10b-5. Defendant ESI is a private for-profit college

---

[1] Also before the Court is Defendants' Request for Judicial Notice
(Docket No. 45) and Plaintiff's letter brief in opposition to the
Request (Docket No. 52). Because the Court limits its analysis to the
Complaint, the Request for Judicial Notice is denied as moot.

system with a focus on technology-oriented education. Modany and Fitzpatrick are ESI's Chief Executive Officer and Chief Financial Officer, respectively. Defendants move to dismiss the Complaint on the ground that it fails to meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), U.S.C. § 78u-4(b).

By Order dated March 30, 2012, the Court preliminarily granted Defendant's motion to dismiss, for which the Court now sets forth its findings, reasoning, and conclusions.

## I.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Plaintiffs claiming fraud, including securities fraud and common law fraud, must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). A complaint alleging securities fraud must also meet the requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), which requires that a complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is based on information or belief, the complaint shall state with particularity all facts on which that belief is formed." Id.

"To state a claim under Rule 10b-5 for misrepresentations, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." ATSI, 493 F.3d at 105.

In order to satisfy Rule 9(b) and PSLRA pleading requirements, "[a] securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Id. at 99. An omission is actionable "only when the [defendant] is subject to a duty to disclose the omitted facts." In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d. Cir 1993). Although "Rule 10b-5 imposes no duty to disclose all material, nonpublic information, once a party chooses to speak, it has a 'duty to be both accurate and complete.'" Plumbers Union Local No. 12 Pension Fund v. Swiss Reinsurance Co., 753 F. Supp. 2d 166, 180 (S.D.N.Y. 2010) (quoting Caiola v. Citibank, N.A., N.Y., 295 F.3d 312, 331 (2d Cir. 2002)).

## II.  **FACTUAL ALLEGATIONS**[2]

ESI is a for-profit college system that owns and operates over 105 ITT Technical Institutes and Daniel Webster College.  With a focus on technology-oriented programs, ESI operates in 38 states and serves approximately 80,000 students.  Almost all of ESI's revenue derives from federal financial aid provided to its students by Title IV ("Title IV") of the Higher Education Act of 1965 ("HEA").  The HEA delegates regulatory authority to the Department of Education ("DOE") to establish eligibility standards for schools seeking to benefit from Title IV funding.

The present suit arises from a dramatic decline in the value of ESI stock during the summer of 2010 following (1) the release of a report by the Senate Committee on Health, Education, Labor and Pensions (the "HELP Committee") critical of the for-profit college industry, (2) the Government Accountability Office's ("GAO") investigation of the industry, (3) DOE's announcement that it would propose tougher new regulations regarding Title IV eligibility, and (4) negative media coverage of for-profit colleges.

---

[2] The facts below are drawn from the Complaint and documents cited or relied upon therein.  Except where specifically quoted, no further reference to these documents will be made.  The Court accepts these facts as true for the purposes of ruling on the Motion.  See Spool v. World Child Int'l Adoption Agency, 520 F. 3d 178, 180 (2d Cir. 2008).

-5-

A.   <u>DEFENDANTS' ALLEGED MISREPRESENTATIONS AND OMMISSIONS</u>

Plaintiff alleges that between October 23, 2007 and August 13, 2010 (the "Class Period") the Defendants "operated a systemically predatory business model that relied upon deceit, manipulation, lies, and outright fraud" to enroll as many students as possible in order to maximize ESI's federal Title IV funding.  (Compl. ¶ 3.)  This practice involved: setting stringent enrollment quotas for ESI recruiters; using high-pressure sales tactics to recruit students; enrolling students who were unprepared to succeed in school; misrepresenting to prospective students the services provided, the transferability of ESI credits, and the true costs of an ESI program; counting as "enrolled" students who attended class for only one day; enrolling students past the start date of the semester; and stretching ESI's graduate employment placement rates. Plaintiff supports these allegations with statements from 42 confidential witnesses ("CWs"), news articles and reports, public filings, press releases, and other public statements issued by ESI.  The CWs are former ESI students and former employees of ESI who were employed during the Class Period.

The Complaint alleges that ESI failed to disclose this "systematically predatory business model . . . as the

driving force behind its financials and future business prospects . . . ." (Id. ¶ 13.) Instead, the Defendants misleadingly attributed ESI's growth in student enrollment, and thus its financial success, to (1) demand for ESI's "high-quality, career focused" programs; (2) longer tenure of ESI's recruiters and improvement in its recruiter training program; (3) its "single internal focus" on student outcomes; (4) effective advertisement campaigns; and (5) its graduate placement rates. Because of Defendants' nondisclosure of the real reasons behind its financial success and growth, ESI stock was artificially inflated throughout the Class Period.

The Complaint also alleges that Defendants made misleading statements regarding ESI's commitment to ensuring compliance with Title IV requirements; when in fact, ESI's "predatory business model" put the institute at risk of losing Title IV eligibility. ESI's quota system, for example, in which, according to Plaintiff, recruiter compensation was determined <u>solely</u> by whether enrollment quotas were met, put ESI at risk of violating a DOE regulation prohibiting salary adjustments "based solely on the number of students recruited, admitted, enrolled, or awarded financial aid." 34 C.F.R. § 668.14(b)(22)(ii)(A).

In sum, the Complaint alleges that the Defendants "misled investors through a series of calculated statements attributing ESI's positive financial performance to legitimate business practices," when in fact, ESI's success was a result of its "predatory business model." (Pl. Opp. at 2.)

B.   ALLEGATIONS OF SCIENTER

The Complaint alleges that the Individual Defendants were aware of ESI's "fraudulent scheme" by virtue of their positions at the ESI. (Compl. ¶ 431.).  It alleges that that they "had access to material non-public information about [ESI's] business, finances, enrollment, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith." (Id. ¶ 435.)  These allegations are largely supported by CW statements regarding the Individual Defendants' "hands-on" management style and their personal involvement with ESI's recruiting practices, including the company's quota system and standardized script used by recruiters. (Id. ¶¶ 144, 155, 180.)

Because the Individual Defendants were aware of the "ongoing fraudulent scheme," the Complaint alleges that they were therefore also aware that the public documents and statements they issued on behalf of ESI "were materially false and misleading." (Id. ¶ 431.) Furthermore, the Complaint alleges that the Individual Defendants had a motive to commit fraud because of ESI's executive compensation structure, which awarded bonuses based in part on ESI's earnings per share, total student enrollment, and graduate employment rates. (Id. ¶ 433.)

C.   ALLEGATIONS OF LOSS CAUSATION

Plaintiff alleges loss causation through a series of partial disclosures of previously concealed information to the market.   These disclosures include:

- In June 2010, (1) an announcement of a series of hearings to examine federal spending at for-profit colleges; (2) a DOE announcement that it was preparing tougher new regulations for the for-profit education industry; and (3) the HELP Committee hearing and report, which questioned practices at for-profit institutions.   Allegedly, these three disclosures caused the price of ESI stock to fall more than fifteen percent over the course of June 2010.  (Compl. ¶¶ 396-400, 450.)

- A July 1, 2010 media report criticizing for-profit colleges, in which Senator Durbin compared the growth of for-profit educational institutions to the subprime mortgage bubble and decried "worthless diplomas" and "whopping levels of debt."   (Compl. ¶ 401.)

- An August 3, 2010 New York Times article regarding the impending release of a GAO report detailing abuses in the for-profit education industry, which allegedly caused the price of ESI stock to fall 4.53 percent.

- The August 4, 2010 GAO report presenting findings of an investigation into whether for-profit colleges engaged in fraudulent, deceptive, or otherwise questionable marketing practices, which allegedly caused the price of ESI stock to fall 4.47 percent.

- An August 6, 2010 disclosure that ESI received a request for information and documents from the HELP Committee related to ongoing hearings, including information on ESI's student recruitment practices and loan default rates, which allegedly caused the price of ESI stock to fall nearly six percent.

- On August 13, 2010, a release of data by the DOE showing a student-loan repayment rate of thirty-one percent at ESI, which allegedly caused the price of ESI stock to drop 7.17 percent on August 13, and 14.6 percent on August 16, 2010.

According to Plaintiff, these partial disclosures caused the price of ESI common stock to fall 58.8% from its Class Period high. This decline in value caused "substantial harm to investors who suffered losses as the artificial inflation generated by Defendants' fraud was removed." (Compl. ¶ 452.)

### III. DISCUSSION

A.  ALLEGED MISSTATEMENTS AND OMISSIONS

Plaintiff's allegations concerning the Defendant's material misstatements and omissions fail to satisfy the pleading standards of Rule 9(b) and of the PSLRA. Not only

is it unclear which statements are alleged to be
misleading, but Plaintiff also fails to state with the
required particularity the "reason or reasons" these
statements are misleading. 15 U.S.C. § 78u-4(b)(1). The
Complaint includes 76 pages of block quotes of nearly every
public statement made by ESI during the Class Period, with
the statements alleged to be misleading in bold and
italics. (Compl. ¶¶ 84-423.) Interspersed throughout
these block quotes are vague allegations purporting to
explain how and why the bolded and italicized portions are
misleading. However, Plaintiff's bolding and italicizing
does little to satisfy the PSLRA's specificity requirement.
This is because Plaintiff highlights more than half of the
text in the giant block quotes, while simultaneously
conceding that it is not challenging many of the statements
it has chosen to highlight. (See, e.g., id. ¶¶ 249-50,
258, 268-69, 296, 329, 346 & 349 (simple statements of
ESI's historic revenue are repeatedly bolded and italicized
despite Plaintiff's concession that "it is not challenging
ESI's historic revenue." (Pl. Opp. at 14))). Vague and
disorganized allegations, no matter how voluminous, do not
satisfy the PSLRA. Tabor v. Bodison Biotech, Inc., 579 F.
Supp. 2d 438, 543 (S.D.N.Y. 2008) ("Plaintiff's use of
large block quotes from SEC filings and press releases,

followed by generalized explanations of how the statements were false or misleading are not sufficient to satisfy the heightened pleading standard.").

The Court will nevertheless attempt to organize the allegations in the Complaint so that it can address the conduct alleged to be fraudulent as a coherent whole. Specifically, the Court concludes that the Complaint alleges four types of fraudulent misrepresentations: (1) misleading statements regarding recruitment and enrollment growth; (2) misleading statements regarding ESI's business focus; (3) misrepresentations of ESI's graduate placement rate; and (4) misleading assurances regarding legal compliance.[3]

### 1.   Misleading Statements Regarding Enrollment Growth and Revenue

Plaintiff alleges that Defendants made misleading statements by "repeatedly attributing ESI's financial success . . . to expanding student enrollment, graduate placement rates, and ESI's 'single internal focus' on student outcomes and the 'value proposition' of an ESI education."   (Pl. Opp. at 12.)   Such statements are misleading because Defendants failed to disclose that "the

---

[3] To the extent this Decision and Order does not address specific statements alleged to be misleading that are not included within these four categories, the Court finds that Defendants' general arguments as to particularity and materiality would defeat any claims based on such statements.

true reasons behind ESI's financial performance were its focus on a predatory quota system [for recruiters], stretching job placements, and hyper-aggressive sales tactics." (Id.)

Plaintiff further alleges that Defendants' made misleading statements by attributing ESI's strong enrollment growth to, among other things, increased demand for ESI's expanding programs of study, a more experienced and better-trained recruiting department, and effective advertising campaigns. Defendants failed to disclose, however, that the real reason for ESI's enrollment growth was its "predatory" recruitment practices and the counting of students that barely attended class. Notably, Plaintiff does not challenge ESI's reported revenue or enrollment numbers during the Class Period; the allegations are limited to misrepresentations concerning "the driving force behind ESI's performance." [4]  (Id. at 14.)

Although the Complaint describes all of these statements regarding revenue and enrollment as "false," it does not allege any facts contradicting their veracity (except possibly with respect to graduate placement rates and ESI's business focus, which are discussed below).

---

[4] Because Plaintiff does not challenge ESI's actual enrollment numbers, the Court deems the allegation that ESI stretched its numbers by counting students that only attended one day of class to be dropped.

Plaintiff does not allege that ESI's increased revenue was
<u>not</u> due to higher student enrollment, or that ESI's
increased enrollment was <u>not</u> attributable, at least in
part, to more experienced and better-trained recruiters,
effective advertising, and increased demand for its
expanding programs. The issue then is whether these
statements are misleading, such that ESI had a duty to make
further disclosures concerning its predatory recruiting
practices.

The Court notes that absent a duty to cure prior
misleading statements, ESI was under no duty to disclose
its hyper-aggressive sales tactics and quota system or to
characterize its business model and educational programs
"in a pejorative manner." <u>Ballan v. Wilfred Am. Educ.</u>
<u>Corp.</u>, 720 F. Supp. 241, 249 (E.D.N.Y. 1989). This is
"[b]ecause the securities laws do not impose a general
duty to disclose corporate mismanagement or uncharged
criminal conduct." <u>In re Marsh & McLennan Cos., Inc.</u>, 501
F. Supp. 2d 452, 469 (S.D.N.Y. 2006). Moreover, the
alleged omissions must be "sufficiently connected to
Defendants' existing disclosures to make those public
statements misleading." <u>Id.</u>

Here, there is no direct connection between
Defendants' statements regarding the sources of its revenue

and enrollment growth and the omitted information regarding ESI's predatory recruitment practices or quota system. Defendants' statements that ESI's revenue grew because of higher enrollment and tuition say nothing about how ESI compensates or incentivizes its recruiters, or how aggressively it markets itself to prospective students. Even statements that its enrollment growth was due in part to more experienced and better-trained recruiters would not suggest to a reasonable investor that ESI does not use a quota system for its recruiters, or that its recruiters do not use a script or employ hyper-aggressive sales tactics. In short, these statements are not misleading because they do not suggest that the undisclosed improper activity alleged by Plaintiff was not occurring. See, e.g., In re FBR Inc. Sec. Litig., 544 F. Supp. 2d 346, 358 (S.D.N.Y. 2008) ("[P]laintiffs do not point to any specific statement in the press releases that could be interpreted by a reasonable investor as suggesting that the company or its executives had not assisted or participated in a single insider trading violation.").

Plaintiff cites several cases finding that when a company puts at issue the cause of its financial success, "the alleged failure to disclose the true sources of such revenue could give rise to liability under Section 10(b)."

In re Van der Moolen Holding N.V. Sec. Litig., F. Supp. 2d
388, 401 (S.D.N.Y. 2005). (See Pl. Opp. at 14-15.)  Here,
however, the connection between the misleading statement,
i.e., the source of ESI's success, and the alleged
omission, i.e., the nondisclosure of the predatory business
model, is far more tenuous than the connections between
statement and alleged omission at issue in the cases cited
by Plaintiff.  ESI stated repeatedly that the source of its
revenue was Title IV-funded student tuition, and Plaintiff
does not allege that a material portion of ESI's revenue
came from some other undisclosed source.   At most,
Plaintiff alleges that a material number of ESI students
were victims of ESI's predatory recruitment practices, and
thus a material portion of ESI's revenue came from this
undisclosed "source."  This is too tenuous a connection to
render ESI's statements regarding its financial success
misleading.

> 2. Misrepresentations    Regarding    ESI's   Graduate
>    Employment Placement Rate

Plaintiff alleges that ESI "stretched" its publicly
reported graduate employment placement rates in order to
mislead prospective students and investors.  (Compl. ¶¶
194-147.)  According to several CW statements, ESI did this
by counting graduates employed for only a day as well as

graduates employed in a field unrelated to the ESI program completed.

However, even if one cobbles together all of Plaintiff's allegations regarding stretching, the Complaint does not plead the extent to which such stretching actually impacted ESI's reported overall placement rate. Because placement rates are not directly related to revenue, Plaintiff must show an especially egregious discrepancy between ESI's disclosed rate and its actual rate, in order for Defendants' nondisclosure of the alleged incidents of "stretching" to be material to investors. Here, Plaintiff has not met this burden, and thus has failed to establish "a substantial likelihood" that such disclosure "would have been viewed by [a] reasonable investor as having significantly altered the total mix of information made available." Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1301, 1309 (2011) (emphasis added).

3.   Misleading Statements Regarding ESI's Business Focus

The Complaint alleges that, throughout the Class Period, Defendants made misleading statements portraying ESI as an institution focused on providing quality, career-focused, postsecondary education, including such statements as:

- We're very focused on the outcomes for the students . . . . (Compl. ¶ 287.);

- Outcomes is the most important thing that we do, so we have a lot of focus there. (Id. ¶ 292.)

- We strive to attract students with the motivation and ability to complete the career-oriented educational programs offered by our institutes. (Id. ¶ 284.);

- Our single internal focus continues to be on maximizing students' success and helping our students improve their lives through a high quality career-based education offered by our ITT Technical Institutes. (Id. ¶ 306.)

Plaintiff alleges that these statements were false and misleading because "[i]n reality, ESI was focused upon manipulating its student population at all stages" and "on increasing enrollment numbers at any cost, without regard to student's academic success . . . ." (Id. ¶¶ 261, 294.) According to Plaintiff, "[a]ll that mattered to ESI was meeting quotas . . . [t]he company is nothing more than a sales machine that operates on federal financial aid." (Id. ¶ 261.)

These allegations, if true, might establish a strong claim for a dissatisfied student to bring against ESI. However, the alleged misleading statements, when made to investors, amount to typical corporate puffery, and as such, they are not actionable under the securities laws. These statements are precisely the type of vague,

boilerplate pronouncements that no reasonable investor would substantially rely upon when evaluating a company. See, e.g., ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 206 (2d Cir. 2009) (finding statements regarding business practices such as that defendant "set the standard for integrity" to be "precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable."); Footbridge Ltd. v. Countrywide Home Loans, Inc., No. 09 Civ. 4050, 2010 WL 3790810, at *24 (S.D.N.Y. Sept. 28, 2010) ("Statements about corporate culture and integrity are typically considered to be inactionable puffery.").

Plaintiff further alleges that Defendants' statements regarding its admissions standards were misleading because they implied that ESI had standards, when in fact, according to Plaintiff, it did not. Plaintiff points to ESI's admittance of convicted criminals as evidence of its lack of admissions standards. However, the statements cited by Plaintiff do not imply that ESI claimed its admissions standards to be anything other than minimal. (See Compl. ¶ 286 (stating that for some programs students are required to pass an admissions test); ¶ 368 (other programs may require students to complete the SATs or simply take a college tour). And Plaintiff does not allege

that ESI ever claimed that it did not admit convicted criminals. Therefore, any discrepancy between ESI's stated admissions standards, which were expressly minimal, and its actual standards, which may or may not have been marginally lower, could not be material to an investor. This is especially so because selectivity is not necessarily positively correlated with profitably, in fact, the opposite may be true.

      D.   <u>Misleading Assurances Regarding Legal Compliance</u>

The Complaint also alleges that statements regarding ESI's commitment to legal compliance, particularly with respect to Title IV eligibility, were misleading because ESI's predatory business model put the company at risk of losing federal aid funding. However, these allegations are not discussed in the parties' briefings and the Complaint itself never alleges that ESI was ever found to be in noncompliance at any point during the Class Period. Moreover, for ESI's general assurances of compliance to be misleading, Plaintiff must particularly and specifically establish widespread problems of noncompliance throughout ESI's many campuses and programs. Plaintiff's allegations of specific instances of unethical or fraudulent practices do not render Defendants' broad statements regarding compliance misleading. The relevant regulations, in fact,

do not prohibit or penalize incidents of such behavior. Rather the regulations set numerical thresholds for certain metrics, such as the maximum percentage of tuition revenue a school may draw from Title IV funding. Again, there is no suggestion that Defendant ever violated these regulatory limits.

Because the Court finds no well-plead actionable misstatements, it would be impossible for the Court to conclude that the Complaint sufficiently alleges scietner, i.e., that Defendants knowingly or recklessly misled the market. Moreover, this holding necessarily means that Plaintiff's control-person claim against the Individual Defendants also fails. See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1472 (2d Cir. 1996).

### IV. CONCLUSION

Accordingly, for the reasons stated above, it is hereby

   **ORDERED** that the Motion (Docket No. 43) of defendants Kevin M. Modany, Daniel M. Fitzpatrick, and ITT Educational Services, Inc. to Dismiss the Corrected Consolidated Class Action Complaint is **GRANTED**; and it is further,

   **ORDERED** that the Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**

Dated: New York, New York
      4 May 2012

                                  VICTOR MARRERO
                                      U.S.D.J.